# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 25-10-1 |
| VERSUS | JUDGE DONALD E. WALTER |
| MALCOLM FLOWERS | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Indictment filed by Defendant, Malcolm Flowers ("Flowers"). See Record Document 18. The United States of America ("the Government") filed an opposition. See Record Document 21. For the reasons assigned below, Flowers's motion is **DENIED**.

## BACKGROUND

Flowers has three prior felony convictions: (1) Possession of Schedule II CDS (pled guilty on September 9, 2013); (2) Battery of a Police Officer (pled guilty on July 17, 2018); and (3) Possession of Schedule II CDS (pled guilty on March 15, 2023). See Record Documents 21 and 22. On March 15, 2023, Flowers was sentenced to two years of imprisonment, suspended, and three years of supervised probation. The probation was revoked on January 11, 2024, and the original sentence of imprisonment was imposed. See Record Document 22.

On December 13, 2023, Flowers was indicted in this Court with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)"). See Record Document 1. At the time of the instant offense, Flowers was subject to a three-year term of probation. Flowers now moves to dismiss his single-count indictment, arguing Section 922(g)(1), as applied to him, violates his Second Amendment right to possess and use firearms. See Record

Document 18. The Government opposes this motion, arguing that Section 922(g)(1) is constitutional as applied to Flowers because his state probation separately barred gun possession and his prior felonies do not render the statute unconstitutional. See Record Document 21.

**LAW & ANALYSIS**

**I.    Second Amendment Jurisprudence.**

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court interpreted the Second Amendment to confer "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." D.C. v. Heller, 554 U.S. 570, 635, 128 S. Ct. 2783, 2821 (2008). The Supreme Court later recognized that the Second Amendment's protections extend to "an individual's right to carry a handgun for self-defense outside the home." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 10, 142 S. Ct. 2111, 2122 (2022). However, the Second Amendment does not grant the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626, 128 S. Ct. at 2817. As with most constitutional rights, "the right secured by the Second Amendment is not unlimited." Id. The issue here is whether the application of Section 922(g)(1) to Flowers is consistent with the Second Amendment.

In Bruen, the Supreme Court promulgated a test for determining whether a firearms regulation is consistent with the Second Amendment.[1] See Bruen, 597 U.S. at 17, 142 S. Ct. at 2126. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. Where a regulation impinges on conduct

---

[1] The Supreme Court declined to adopt the two-step means-end scrutiny test that had gained popularity with the circuit courts following Heller. See Bruen, 597 U.S. at 17, 142 S. Ct. at 2125-26.

covered by the plain text of the Second Amendment, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. This latter historical inquiry "will often involve reasoning by analogy." Id. at 28, 142 S. Ct. at 2132. "[D]etermining whether a historical regulation is a proper analogue for any distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" Id. at 28-29, 142 S. Ct. at 2132. The central consideration for determining if a regulation is relevantly similar is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." Id. at 29, 142 S. Ct. at 2133. In other words, courts should consider "how and why the regulations burden a law-abiding citizen's rights to armed self-defense." Id. at 29, 142 S. Ct. at 2132-33.

This inquiry does not require the challenged modern regulation to have a "historical twin" or to "precisely match its historical precursors." United States v. Rahimi, 602 U.S. 680, 692, 144 S. Ct. 1889, 1898 (2024). Further, "[e]ven when a law regulates arms-bearing for permissible reasons, . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." Id. With these principles in mind, the Supreme Court in Rahimi turned to the constitutionality of Section 922(g)(8)(C)(i)[2] and held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. at 702, 144 S. Ct. at 1903. The Supreme Court interpreted historical surety and going armed laws to confirm that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 698, 144 S. Ct.

---

[2] Title 18 U.S.C. § 922(g)(8)(C)(i) temporarily "bars an individual from possessing a firearm if his restraining order includes a finding that he poses a 'credible threat to the physical safety' of a protected person." Rahimi, 602 U.S. at 693, 144 S. Ct. at 1898 (quoting 18 U.S.C. § 922(g)(8)(C)(i)).

3

at 1901. The Supreme Court then found those laws to be proper historical analogues for Section 922(g)(8)(C)(i) because that statute "applies to individuals found to threaten the physical safety of another." Id. Therefore, that provision was not unconstitutional as applied to Rahimi. See id. at 702, 144 S. Ct. at 1903.

In United States v. Diaz, 116 F.4th 458 (5th Cir. 2024), the Fifth Circuit analyzed an as-applied challenge to the constitutionality of Section 922(g)(1).[3] See Diaz, 116 F.4th at 461. Because "[t]he plain text of the Second Amendment covers the conduct prohibited by [Section] 922(g)(1)," the Government must demonstrate that regulating the defendant's "possession of a firearm is consistent with the Nation's historical tradition of firearm regulation." Id. at 467 (internal quotation marks omitted). The Government satisfies this burden by identifying "a well-established and representative historical analogue" that is "'relevantly similar' to the challenged law." Id. (quoting Bruen, 597 U.S. at 29-30, 142 S. Ct. at 2132-33). This inquiry requires consideration of an individual defendant's pertinent criminal history,[4] and the Government survives an as-applied challenge by demonstrating "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous" to the defendant's criminal history. Diaz, 116 F.4th at 467. Ultimately, the Fifth Circuit rejected Diaz's as-applied challenge because "laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of [Section] 922(g)(1) to Diaz." Id. at 471.

---

[3] In this opinion, the Fifth Circuit noted that Bruen rendered "obsolete" the prior cases affirming the constitutionality of Section 922(g)(1) and further acknowledged that the Second Amendment's protections extend to felons. Id. at 465-66.

[4] The relevant criminal history should not include charges that were dismissed, that were not punishable by a term of more than one year, or that were part of the underlying offense. See Diaz, 116 F.4th at 467.

**II.    Analysis of Flowers's As-Applied Challenge.**

The indictment charges Flowers with Section 922(g)(1), which reads:

> (g) It shall be unlawful for any person –
>
> (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year;
>
> to ship or transport in interstate or foreign commerce, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). As set forth in Diaz, "[t]he plain text of the Second Amendment covers the conduct prohibited by [Section] 922(g)(1)." Diaz, 116 F.4th at 467. The burden thus shifts to the Government to demonstrate that the application of Section 922(g)(1) to Flowers is "consistent with the Nation's historical tradition of firearm regulation." Id. Flowers has three prior felony convictions: (1) Possession of Schedule II CDS (crack cocaine); (2) Battery of a Police Officer; and (3) Possession of Schedule II CDS (hydrocodone). See Record Documents 21 and 22. Therefore, the Government must show that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous" to Flowers's. Diaz, 116 F.4th at 467.

The Government argues that the "as-applied" Bruen challenge fails for a defendant-specific reason: Flowers's state probation conditions separately prohibited him from possessing a gun at the time he committed the Section 922(g)(1) offense. See Record Document 21 at 3. Flowers was indicted with one count of being a felon in possession of a firearm under Section 922(g)(1) while he was subject to a three-year term of probation. The Fifth Circuit has held that "the [G]overnment may disarm those who continue to serve sentences for felony convictions." United States v. Giglio, 126 F.4th 1039, 1044 (5th Cir. 2025); see also United States v. Contreras, 125 F.4th 725, 732-33 (5th Cir. 2025).

5

In Giglio, the defendant, Giglio, was serving a term of supervised release. The Fifth Circuit repeatedly cited and discussed United States v. Goins, 118 F.4th 794 (6th Cir. 2024) and United States v. Moore, 111 F.4th 266 (3d Cir. 2024). See Giglio, 126 F.4th at 1043-45. In Goins, the Sixth Circuit held that Section 922(g)(1) was constitutional as applied to a defendant sentenced to probation, and in Moore, the Third Circuit found that Section 922(g)(1) was constitutional as applied to a defendant on supervised release. See Goins, 118 F.4th at 805; Moore, 111 F.4th at 273. The Fifth Circuit highlighted that, like Moore and Giglio, Goins brought an as-applied challenge to Section 922(g)(1) because "he was on probation at the time of his arrest, and his underlying felonies involved the unlawful use of drugs." See Giglio, 126 F.4th at 1044. The Fifth Circuit noted the Sixth Circuit examination of historical laws and its holding "that 'our nation's historical tradition of forfeiture laws . . . supports disarming those on parole, probation, or supervised release[,]'" such that "the government today could justifiably 'disarm[] those on parole, probation, or supervised release.'" Id. (quoting Goins, 118 F.4th at 798, 801-02). After discussing Goins, the Fifth Circuit found that it "agree[d] with [its] learned brethren and sistren: the government may disarm those who continue to serve sentences for felony convictions" and that "[t]he laws cited in Moore and Goins make clear that disarmament was a typical condition of all manner of sentences." Id.; see also Contreras, 125 F.4th at 732-33 (holding that Section 922(g)(1) was constitutional as applied to a defendant sentenced to supervised release).

The Fifth Circuit found that the Government carried its burden in showing that it could deprive Giglio of firearms at the time of his arrest because Giglio was serving a sentence for a prior conviction. See Giglio, 126 F.4th at 1044. The Fifth Circuit upheld the constitutionality of Section 922(g)(1) as applied to Giglio and further held that the court need not look beyond Giglio's

6

prior felony conviction to determine that it was constitutional for the Government to regulate his possession of firearms for that period. See id. at 1045-46.

As previously stated, Flowers was indicted with one count of being a felon in possession of a firearm under Section 922(g)(1) while he was subject to a three-year term of probation. Thus, Giglio covers Flowers's situation here as there exists "a historical tradition wherein '[c]onvicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences.'" Id. (quoting Moore, 111 F.4th at 271); see also United States v. Staeger, No. 24-108-1, 2025 WL 605053, at *3 (S.D. Miss. Feb. 25, 2025). The Government has shown that Flowers's indictment under Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation," and Flowers's motion must be denied. See United States v. Jones, 24-50204, 2025 WL 586826, at *1 (5th Cir. Feb. 24, 2025) (holding that Section 922(g)(1) was constitutional as applied to a defendant sentenced to probation).

Although not necessary given the finding above, the Court further notes that Flowers's prior convictions possession of crack cocaine and possession of hydrocodone likewise support the constitutionality of Section 922(g)(1) as applied to him. No founding-era laws explicitly prohibit the possession of illegal drugs, but the Government need only identify a historical analogue, not a historical twin. The Government cites founding-era legislation that punishes the trafficking and possession of contraband. See Record Document 21 at 8-9. Acts such as trading stolen horses, stealing mail, and making or trading counterfeit or forged securities constituted capital crimes punishable by death.[5] The "why" and "how" of these founding-era regulations demonstrate that

---

[5] See e.g. 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, 130 (1819); An Act to Establish the Post-Office and Post Roads within the United States, § 17 1 Stat. 232, 237 (1792); An Act for the Punishment of Certain Crimes Against the United States, §§ 115, 1 Stat. 112, 115 (1790)).

Section 922(g)(1) "impose[s] a comparable burden on the right of armed self-defense" and that the "burden is comparably justified." <u>Bruen</u>, 597 U.S. at 29, 142 S. Ct. at 2133. "The purpose of capital punishment in colonial America was threefold: deterrence, retribution, and penitence." <u>Diaz</u>, 116 F.4th at 469. Section 922(g)(1) similarly aims to "deter violence and lawlessness." <u>Id.</u> Just as the founding-era laws aimed to deter and punish the trafficking and possession of contraband, so, too, does the application of Section 922(g)(1) to Flowers as it aims to punish and deter the possession of crack cocaine and hydrocodone, a drug that can be likened to contraband. Further, "[p]ermanent disarmament under [Section] 922(g)(1) does not punish such crimes 'to an extent beyond what was done at the founding,'" given that these founding-era laws punished the trafficking and possession of contraband with death.[6] <u>Id.</u> (quoting <u>Rahimi</u>, 602 U.S. at 692, 144 S. Ct. at 1898).

Because there exists a sufficient historical analogue to Flowers's predicate offenses, the Government has shown that Flowers's indictment under Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation," and Flowers's motion must be denied. <u>Diaz</u>, 116 F.4th at 467; <u>see also</u> <u>United States v. Wilson</u>, No. 22-238, 2024 WL 4436637, at *4-5 (E.D. La. Oct. 6, 2024) (finding that Section 922(g)(1) was constitutional as applied to a defendant with prior convictions for drug trafficking and possession and citing multiple cases throughout the country with similar holdings); <u>see</u> <u>United States v. Carter</u>, No. 23-22, 2024 WL 4723236, at *6 (E.D. La. Nov. 8, 2024) (finding that Section 922(g)(1) was constitutional as applied to a defendant with prior convictions for drug trafficking, drug possession, and possession of a firearm by a convicted felon).

---

[6] As set forth more fully in <u>Diaz</u>, the particular punishment of permanent disarmament imposed through Section 922(g)(1) finds a historical analogue in founding-era "going armed" laws, which imposed "permanent arms forfeiture as a penalty." <u>Diaz</u>, 116 F.4th at 470-71.

## **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Flowers's Motion to Dismiss Indictment is **DENIED**.

An order consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 6th day of March, 2025.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE